IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. JOHN DOUGLAS KNIGHT, *Defendant.* | Case No. CR-21-157-JFH |

### UNITED STATES' SENTENCING MEMORANDUM

To assist the Court, the United States, by its undersigned counsel, provides the following memorandum recommending that this Court accept the plea agreement between the parties, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which provides for a sentencing range of 210 to 240 months imprisonment, and impose a sentence of 240 months imprisonment.

### Background

On May 17, 2021, Defendant John Knight (Defendant) was named in a two-count Indictment filed in the United States District Court for the Eastern District of Oklahoma for the killing of Scotty Candler in Indian Country in May 2015. Count One of the Indictment charged Defendant with Murder in Indian Country, in violation of 18 U.S.C. §§ 111 l(a), 1151, 1153, and 2. Count Two of the Indictment charged Defendant with Causing the Death of a person in the Course of a Violation of Title 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924 (i)(l) and 2.

On March 9, 2022, Defendant pled guilty to a single-count Information, charging Defendant with Murder in Indian Country - Second Degree, in violation of 18 U.S.C. §§ 1111(a), 1151, 1153, & 2. According to the plea agreement, pursuant Rule 11(c)(1)(C) of the Federal Rules

1

of Criminal Procedure, Defendant agreed that a sentencing range of 210-240 months imprisonment is the appropriate disposition of this case. (Plea Agreement (ECF 54) at p. 10).

Defendant admitted that on or about May 30, 2015, he went to the residence of Scotty Candler (the victim) with Matthew Armstrong in a car driven by Jimmy Armstrong. *Id.* at 3. According to Defendant, he and Matthew Armstrong were under orders from the Indian Brotherhood to go to Candler's residence to question him. *Id.* Candler lived in a brown storage unit building in a rural location between Konawa and Maud. *Id.* Defendant and Matthew Armstrong were both carrying firearms. According to Defendant, he and Matthew Armstrong planned to question, point their firearms at Candler, scare him, and beat him up. *Id.* Defendant and Matthew Armstrong went to the door of Candler's residence. *Id.* Defendant knocked on the door. *Id.* Candler opened the door, and two dogs ran out of the residence. According to Defendant, he and Matthew Armstrong killed Candler by shooting him one time in the head. *Id.* They then ran from the residence and disposed of the firearms before they were picked up a short time later by Jimmy Armstrong. *Id.*

In addition to Defendant, Matthew Armstrong and Jimmy Armstrong were also charged separately and pled guilty for their roles in the murder of Candler. On October 20, 2021, Matthew Armstrong pled guilty to one count of Assault with a Dangerous Weapon with Intent to do Bodily Harm in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 2, 1151, and 1153, and one count of Use and Carry and Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). *See U.S. v. Matthew Armstrong*, 21-cr-335-RAW, Plea Agreement (ECF 10). In his plea agreement, Matthew Armstrong specified that "John Knight then went inside the residence and shot Candler in the head, killing him" and "[a]fter John Knight shot the victim, [Matthew Armstrong] saw the victim lying on the bed, twitching." *Id.* at 3.

On January 17, 2023, Matthew Armstrong was sentenced to two consecutive 10-year sentences in accord with a plea agreement pursuant to Rule 11(c)(1)(C).[1]

On April 7, 2022, Jimmy Armstrong pled guilty to a one-count information charging him with Assault with a Dangerous Weapon with Intent to do Bodily Harm in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 2, 3, 1151, and 1153. *See U.S. v. Jimmy Noel Armstrong*, 22-CR-30-JFH, Plea Agreement (ECF 15). In his plea agreement, Jimmy Armstrong clarified that when he picked up Defendant and Matthew Armstrong after the crime, they "no longer had the firearms and said they had buried them" and that "John Knight said he went into the residence and shot the victim in the head." Jimmy Armstrong, Plea Agreement, at p. 3.

## The Offense of Conviction

Defendant pled guilty to Murder in Indian Country - Second Degree, in violation of 18 U.S.C. §§ 1111(a), 1151, 1153, & 2. The maximum term of imprisonment for this offense is life. 18 U.S.C. § 111l(a). (PSR at ¶53).

## The Advisory Guideline Range

The United States respectfully disagrees with the U.S. Probation Department about the correct calculation under the Sentencing Guidelines (U.S.S.G.). For the reasons explained below, the government's Guidelines calculation is:

| | |
|---|---|
| USSG § 2A1.2 Base offense level | 38 |
| USSG § 3C1.1 Obstruction of Justice | +2 |
| USSG §3E1.1 Acceptance of responsibility | -3 |
| Total Offense Level | 37 |

---

[1] On the same date, Matthew Armstrong received a life sentence for his role in a separate unrelated murder.

3

This calculation is the same as that of the Probation Department (*see* PSR at ¶ 25), except that the Probation Department did not apply the two-level enhancement for Obstruction of Justice pursuant to U.S.S.G. § 3C1.1, which the government believes should apply.

Section 3C1.1 provides for a two-level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, . . . of the instant offense of conviction . . ." Significantly, "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. §3C1.1, Application Note 1. Destroying or concealing evidence that is material to an investigation meets this standard. *See* U.S.S.G. §3C1.1, Application Note 4; *cf. United States v. Bedford*, 446 F.3d 1320, 1324 (10th Cir. 2006) (enhancement for obstruction of justice applied where defendant concealed crack cocaine by eating it when he was pulled over by the police).

While the Probation Department concluded that application of Section 3C1.1 is not appropriate because "the concealment of evidence . . . was prior to an official investigation and was rather conduct that occurred during the course of the crime," PSR Addendum (ECF 64), courts in this circuit apply the enhancement in exactly these circumstances on the grounds that "awareness of an impending investigation is sufficient to . . . warrant [the] enhancement." *United States v. Mills*, 194 F.3d 1108, 1114-15 (10th Cir. 1999) (citing *United States v. Norman*, 129 F.3d 1393, 1399 (10th Cir. 1997).

In this case, shortly after killing Candler, Defendant and Matthew Armstrong concealed the firearm used to commit the murder. The firearm was never found, significantly delaying the solving of the murder. Specifically, Defendant admitted that he was carrying a firearm when he

4

caused the death of Candler. He further admitted that immediately after the murder he "ran from the residence and disposed of the firearms." Moreover, Jimmy Armstrong added the additional detail that when he picked up Defendant after the murder, "John Knight and Matthew Armstrong no longer had the firearms and said they had buried them." (Jimmy Armstrong, Plea Agreement at 3); *cf. Mills*, 194 F.3d at 1114 ("the facts necessary to support an obstruction of justice enhancement need be proven only by a preponderance of the evidence") (citing *United States v. Pelliere*, 57 F.3d 936, 938 (10th Cir. 1995)).

The act of "disposing of" and "burying" the murder weapon in a location where it was never found was clearly for the purpose of thwarting a future investigation, and thus constitutes obstruction of justice pursuant to § 3C1.1.

Several examples illustrate why the enhancement should apply in this case. In *United States v. Norman*, 129 F.3d 1393, 1399 (10th Cir. 1997), *supra*, the defendant attempted to conceal methamphetamine by burying it in the ground after he was involved in a car accident. The court reasoned that, while the police investigation had not started yet, the defendant "reasonably anticipated" that an investigation would follow the accident. Because the defendant was aware of an impending investigation when he concealed the evidence, his actions constituted obstruction of justice for purposes of § 3C1.1.

In *United States v. Yuselew*, No. CR 09-1035 JB, 2010 U.S. Dist. LEXIS 91597 (D.N.M. Aug. 5, 2010), the defendant killed a man with an ax and subsequently buried the ax in his backyard. While the police did not receive the tip that led them to investigate the defendant until two months later, the court found that the defendant's actions constituted obstruction of justice under § 3C1.1. In addressing the fact that the concealment of evidence took place shortly after the crime, the court explained:

5

> While [the act of burying the ax] occurred close in time to the murder, the Court does not believe that § 3C1.1 requires a defendant to sit down, cool off after his grizzly deed, think and plan his obstruction for a specific amount of time, and then threaten a witness or attempt to bury the murder weapon before it can be said that his actions were purposefully calculated to thwart an investigation. The Court believes a defendant can rather quickly after completing a crime begin to purposefully calculate to cover up his crime and thwart an investigation.

*Id.* at *34.

Likewise, in *United States v. DeLeon*, 437 F. Supp. 3d 955, 1017 (D.N.M. 2020), the court found that a defendant's actions before the investigation began "were designed to thwart the investigation" and thus the enhancement for obstruction of justice applied. Shortly after he killed the victim, the defendant burned the victim's body and car, which the court inferred was for the purpose of destroying evidence. *Id.* The court held that this act constituted obstruction for the purpose of § 3C1.1.

Similarly, in the present case, the Court may infer that Defendant's act of "disposing of" and "burying" the murder weapon was done for the purpose of thwarting a "reasonably anticipated" investigation into the death of Candler. In fact, this calculated act was likely one significant factor that caused the subsequent investigation to "run cold" for almost two years. (PSR ¶ 15).

Accordingly, the two-level adjustment for obstruction of justice should apply, resulting in a total offense level of 37 and a range of imprisonment of 210 to 262 months.

### The Plea Agreement Pursuant to Rule 11(c)(1)(C)

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the defendant and the United States agree that a sentencing range of 210-240 months imprisonment is the appropriate disposition of this case. (Pea Agreement p. 10).

According to the Plea Agreement, the parties acknowledged the specific sentencing range departed from the anticipated advisory guideline calculation for the offense to which Defendant pled guilty. *Id.* The Plea Agreement clarified that:

> In reaching this agreement, the parties have considered various factors including, but not limited to, the defendant's acceptance of responsibility; the events and circumstances leading up to the commission of the offense; the strength of the Government's case after considering the available admissible evidence at trial; the expected testimony of the witnesses and the relationship of the witnesses to each other; judicial economy; and the interests of justice.

(Pea Agreement p. 10). The parties further agreed that the specific sentencing range is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.*

### The Government's Recommendation of 240 Months

The Government respectfully requests that the Court accept the 11(c)(1)(C) agreement and sentence Defendant to 240 months imprisonments, consistent with the relevant sentencing factors under 18 U.S.C. § 3553(a).

The court may accept the agreement if it is satisfied that "(1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity." *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018) (quoting United States Sentencing Commission, Guidelines Manual §6B1.2(c) (Nov. 2016)).

As described above, given the applicability of the Guidelines two-level enhancement for obstruction of justice, the agreed sentence is within the applicable guideline range. Accordingly, the Court can accept the plea agreement on this basis.

Additionally, even if the Court disagrees about the application of the enhancement, the sentencing range set forth in the plea agreement is justified under the factors in 18 U.S.C.

§ 3553(a). Specifically, a sentence of 240 months would properly account for the nature and seriousness of Defendant's offense. *See* 18 U.S.C. 3553(a)(1). This offense involved a particularly heinous and apparently calculated act of violence against an innocent stranger inside his home. While Defendant has not admitted that he went to the victim's home with the intention to kill him, he did admit that he went to the victim's home at night, in a rural location, armed with a rifle, with the intention to do violence to the victim.

Further, while Defendant admitted that he was carrying out an order from the Indian Brotherhood (IBH), a violent prison gang, the totality of the evidence shows that the victim Scotty Candler was not involved in gangs and was not involved in the incident for which Defendant was allegedly sent to retaliate. Simply put, Defendant killed an innocent person, which further demonstrates the callous disregard for life that the Government's recommended sentence would address.

Moreover, there is substantial evidence that Defendant was the most culpable of the three men that perpetrated this heinous crime. The totality of the evidence suggests that Defendant was the individual who pulled the trigger, firing the gunshot that killed the victim.

While Defendant himself admitted only that he and Matthew Armstrong together caused the death of Candler by shooting him in the head, both Matthew and Jimmy Armstrong affirmed in their guilty pleas that John Knight pulled the trigger. Specifically, Matthew Armstrong stated that "John Knight then went inside the residence and shot Candler in the head, killing him." According to Jimmy Armstrong, when he picked Defendant up after the crime, "John Knight said he went into the residence and shot the victim in the head." Jimmy Armstrong, Plea Agreement, p. 3. Accordingly, the nature and seriousness of Defendant's offense weigh in favor of the maximum end of the agreed upon range.

Additionally, a sentence of 240 months would avoid unwarranted sentence disparities with Matthew Armstrong, who was previously sentenced for his role in the same crime. *See* 18 U.S.C. § 3553(a)(6). Specifically, according to the terms of his plea agreement, Matthew Armstrong was sentenced to a total of 240 months in prison for the killing of Scott Candler. Given that Defendant has admitted to, at minimum, conduct equivalent to Matthew Armstrong's in relation to the same crime, the Government's recommended sentence of 240 months would avoid an unwarranted disparity.

Lastly, the Government's recommendation would afford deterrence to future criminal conduct and protect the public from further crimes of Defendant. As described above, Defendant admitted to going to the home of a stranger at night and committing a horrific act of violence for no reason other than because he was instructed to do so by members of a prison gang. The Government's recommended sentence would deter similar crimes and protect the public from further crimes by Defendant.

## **CONCLUSION**

For the foregoing reasons, this Court should accept the plea agreement and impose a sentence of 240 months imprisonment.

Respectfully submitted.

CHRISTOPHER J. WILSON
United States Attorney

February 8, 2023

*s/Zachary W. Parsons*
ZACHARY W. PARSONS
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
(918) 709-7537
(918) 684-5101 (fax)
Zachary.Parsons@usdoj.gov

|  |  |
|---|---|
|  | KENNETH A. POLITE, JR.<br>Assistant Attorney General |
| February 8, 2023 | *s/Brian Morgan*<br>BRIAN MORGAN<br>Trial Attorney<br>Human Rights & Special Prosecutions Section<br>1301 New York Avenue NW<br>Washington, DC 20530<br>(202) 305-3717<br>Brian.morgan@usdoj.gov |

## CERTIFICATE OF SERVICE

      I, hereby certify that on February 8, 2023, I electronically transmitted the attached document to the Clerk of Court, which automatically transmitted a copy to Defendant's attorney of record, Andre Courtney Poissant.

                                                 *s/Brian Morgan*
                                                 Brian Morgan
                                                 Trial Attorney